David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
Kristine E. Kruger, Bar No. 253593
KKruger@perkinscoie.com
Thomas N. Abbott, Bar No. 245568
TAbbott@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone: 415.344.7000
Facsimile: 415.344.7050

Attorneys for Defendant
Caliber Home Loans, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DEBORAH SCHICK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALIBER HOME LOANS, INC., NEXLEVEL DIRECT LLC, DRIVING FORCE MEDIA, and BARRY GABSTER,<br><br>Defendants. | Case No. 3:20-cv-00617-VC<br><br>CALIBER HOME LOANS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO FILE CROSSCLAIMS AGAINST DRIVING FORCE MEDIA AND BARRY GABSTER |

REPLY ISO MOTION FOR LEAVE TO FILE
CROSSCLAIMS

152807378.4

## I.    INTRODUCTION

In their[1] oppositions, Schick, DFM, and Gabster (collectively, "Opposing Parties") assert that Caliber's motion should be denied because it caused undue delay. They further assert that Caliber's motion would cause unfair prejudice. Opposing Parties are wrong. Caliber's motion became necessary when Schick, DFM, and Gabster attempted to change the facts DFM had established when it responded to Caliber's written discovery in December 2020. Schick, DFM, and Gabster concealed their actions until the last minute when they sought Caliber's consent to a dismissal of DFM and Gabster. Opposing Parties' delay is not a basis to deny Caliber's motion. Schick, DFM, and Gabster only provided a copy of the declaration Gabster was to provide for dismissal after repeated requests from Caliber. The only reason Caliber had to bring its motion at all, and at the time that it did, was because it first learned in March 2021 that Schick, DFM, and Gabster were negotiating a declaration for dismissal that would change the facts Caliber had previously confirmed in discovery in 2020. Schick, DFM, and Gabster should not be permitted to side-step Caliber's timely response to their actions.

On December 4, 2020, DFM admitted in its discovery responses[2] that Caliber had no affiliation with DFM and no knowledge of DFM's involvement in assisting NLD's generation of leads before learning of Schick's lawsuit. Based on DFM's confirmation of the facts through its responses to Caliber's discovery, Caliber saw no need in pursuing further discovery or asserting claims against DFM. However, in March 2021, Caliber learned that Schick reached a deal to dismiss DFM and Gabster in exchange for a declaration that discussed DFM's business operations. Drafts of the declaration showed that Schick, DFM and Gabster planned to "walk back" DFM's admissions by suggesting a "client" relationship existed between DFM and Caliber. Specifically, the draft declarations suggested a business relationship between Caliber and DFM and provided new details about DFM and Gabster's interactions and communications with NLD and other entities that were involved in generating leads (phone numbers) that resulted in the two calls DFM made to Schick. The declarations also revealed that DFM had been involved in a high volume of

---

[1] Schick's opposition adopts the arguments made by DFM and Gabster. Dkt. No. 95.
[2] Caliber served its discovery on DFM in October 2020.

REPLY ISO MOTION FOR LEAVE TO FILE
CROSSCLAIMS

152807378.4

1   calls for NLD, purportedly to assist the latter in fulfilling its delivery of leads to Caliber.

2          After learning of this declaration for dismissal arrangement between Schick, DFM, and

3   Gabster, Caliber moved expeditiously to obtain a copy of the declaration Gabster was to sign in

4   exchange for Schick's dismissal of Gabster and DFM. With the information contained in the draft

5   declarations, Caliber had sufficient facts to pursue its crossclaims against DFM and Gabster. In

6   other words, but for the facts asserted in the declaration, Caliber would not have sought leave to

7   file its crossclaims against DFM and Gabster.

8          For the reasons discussed in detail below, Caliber respectfully requests that the Court grant

9   its motion.

10  **II.      ARGUMENT**

11         **A.      Gabster and DFM Caused Undue Delay; Not Caliber**

12         Opposing Parties' suggestion that Caliber caused undue delay is entirely misplaced. DFM

13  and Gabster are the source of the delay. In November 2020, DFM responded to interrogatories from

14  Caliber. Its responses showed there was no business relationship or communications between

15  Caliber and DFM.

16         For example, DFM admitted it had no communications with or about Caliber. In response

17  to Interrogatory No. 4 requesting identification of any communications between DFM and Caliber,

18  DFM responded "none."

19               **INTERROGATORY NO. 4:** Identify any and all communications
                 between you and Caliber that occurred prior to the filing of this
20               lawsuit.

21               **Response:** With the exception of communications between DFM
                 agents and Caliber agents incidental to live transfers of calls from
22               DFM to Caliber, none.

23  Dkt. No. 89-1, Ex. A at p. 7. In response to Interrogatory No. 6 requesting identification of any

    communications between DFM and Gabster relating to Caliber, DFM again admitted no contact:
24
                 **INTERROGATORY NO. 6:** Identify any and all communications
25               between you and Gabster that relate to Caliber Home Loans, Inc.

                 **Response:** DFM has not identified information responsive to this
26               request.

27  *Id*.

28         DFM also admitted that Caliber had no knowledge of DFM's relationship with NLD:

REPLY ISO MOTION FOR LEAVE TO FILE
                                                                  CROSSCLAIMS

**INTERROGATORY NO. 12:** If you contend that Caliber was aware of your business relationship with NLD identify all facts relating to your contention.

**Response:** Not applicable – DFM does not so contend.

*Id.* at p. 8. DFM further admitted that Caliber exercised absolutely no control over DFM:

**INTERROGATORY NO. 10:** If you contend that Caliber has ever exercised control over you identify all facts relating to your contention.

**Response:** Not applicable – DFM does not so contend.

*Id.*

**INTERROGATORY NO. 11:** If you contend that Caliber supervised or directed the manner or means of your services or business identify all facts relating to your contention.

**Response:** Not applicable – DFM does not so contend.

*Id.*

**INTERROGATORY NO. 18:** If you contend that Caliber controlled your day-to-day telemarketing activities through NLD identify all facts relating to your contention.

**Response:** Not applicable – DFM does not so contend.

*Id.* at p. 9.

**INTERROGATORY NO. 19:** If you contend that Caliber controlled any aspect of your day-to-day telemarketing activities through NLD identify all facts relating to your contention.

**Response:** Not applicable – DFM does not so contend.

*Id.* at pp. 9-10.

**INTERROGATORY NO. 20:** If you contend that Caliber instructed you regarding what telephone numbers to call identify all facts relating to your contention.

**Response:** Not applicable – DFM does not so contend.

*Id.* at p. 10. With these admissions in hand, Caliber did not require further discovery from DFM or Gabster.

At some point DFM and Gabster reached an agreement with Schick to provide her with a declaration in exchange for dismissal. Dkt. No. 89-1 ¶ 3. However, that declaration is inconsistent with DFM's discovery responses. Notably, the draft declarations of Gabster allude to the existence of a relationship between Caliber and DFM. For example, the initial draft declaration describes Caliber as a "client" of DFM. Dkt. No. 89-1, Ex. B ¶¶ 7, 11, 13. The declaration also describes

DFM's work as fulfilling an order for Caliber. *Id*. ¶ 5 ("fulfilling the Caliber order"), ¶ 7 ("DFM worked on the Caliber orders"), ¶ 11 ("Caliber was always the easiest order to fill…").

In their opposition, DFM and Gabster cite cases where delays of between 8 and 15 months passed between the time facts are first discovered and the motion for leave is filed. *See* Opposition (Dkt. No. 94) at p. 5 (citing *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (15 months), *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (12 months), and *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir 1990) (8 months)). Here, Caliber filed its motion within 6 <u>weeks</u> of learning of the contentions in the declaration Gabster offered Schick for dismissal of DFM and Gabster. Once Caliber compared the declaration to DFM's responses in discovery, Caliber expeditiously filed its motion for leave to bring its crossclaims. As such, *AmerisourceBergen Corp.*, *Ponsoldt*, and *Jackson* are inapposite.

Knowing these facts, Schick, DFM, and Gabster make a procedural argument that Caliber's motion should be denied because Rule 16 applies. Opposing Parties' reliance on Rule 16 is misguided and puts form over substance. Caliber has satisfied the good cause standard under Rule 16, and also the more liberal standard under Rule 15, because it proceeded with its motion within weeks of receiving the declarations that contradicted the discovery responses. Dkt. No. 89-1 ¶¶ 3-7 (noting Caliber's counsel received a copy of the declaration on April 13 and 16 after repeated requests). It is the statements in Gabster's declaration that form the basis of Caliber's proposed counterclaims and Caliber had no basis from which to know of these statements prior to receiving the declaration in mid-April. Had Gabster not agreed to provide an inconsistent declaration in exchange for Schick's dismissal of DFM and Gabster, Caliber would not have pursued leave to assert its crossclaims or need further discovery.

### B.   Caliber's Motion Satisfies Rule 15

"A motion for leave to amend pleadings to file cross-claims is subject to whether the amendment is in bad faith, will cause undue delay, will prejudice the opposing party, or is futile." *Johnson v. National Steel & Shipbuilding Co.*, 759 F. Supp. 606, 612 (S.D. Cal. 1991) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)). Opposing Parties do not dispute that Caliber brought the motion in good faith. Dkt. No. 94 (Opposing Parties "do not intend to argue

REPLY ISO MOTION FOR LEAVE TO FILE
CROSSCLAIMS

bad faith"). They only contend that the second, third, and fourth factors do not weigh in favor of granting Caliber's motion. Opposing Parties are incorrect.

### 1.    Gabster and DFM Caused Undue Delay; Not Caliber

DFM and Gabster are the source of the undue delay; not Caliber. *See supra*, section II. A. Caliber served discovery in October 2020 and received responses from DFM in December 2020 that established no connection between Caliber and DFM and/or Gabster. However, on March 24, 2021, Caliber first learned that DFM and Gabster had reached an agreement with Schick to provide a declaration in exchange for their dismissal. After repeated requests for a copy of the declaration, Caliber received copies on April 13 and 16, 2021. After comparing the declaration against their discovery responses, Caliber decided it could not agree to the dismissal of DFM and Gabster. Caliber further concluded it had grounds to assert its crossclaims against the two defendants. Therefore, it filed its motion for leave to bring crossclaims against DFM and Gabster on May 26, 2021. Thus, this factor weighs in favor of granting Caliber's motion because Caliber acted expeditiously upon learning of the facts supporting its crossclaims.

Conducting discovery on Caliber's cross-complaint will not cause undue delay either. Caliber foresees the need only to depose DFM and Gabster. Caliber has already requested dates for these depositions. Dkt. No. 89-1 ¶ 12. DFM and Gabster have already responded to Caliber's written discovery and produced responsive documents in this litigation. Reopening discovery to allow Caliber to take the depositions of DFM and Gabster will not cause undue delay and it cannot alone serve as a basis to deny the motion. *Newton v. Am. Debt Servs., Inc.*, No. C-11-3228 EMC, 2013 WL 5592620, at *15 (N.D. Cal. Oct. 10, 2013) (additional discovery alone is not sufficient prejudice); *Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 531 (N.D. Cal. 1989) (delay caused by additional discovery alone is not undue prejudice).

### 2.    Opposing Parties' Prejudice Is The Result Of Their Own Conduct

Citing *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998), Opposing Parties claim that they will be prejudiced because they would remain in this action after Schick agreed to dismiss them from her affirmative case and because DFM is now a defunct company without the means to adequately defend itself. Dkt. No. 94 at p. 6. Both arguments are

152807378.4

1    irrelevant and meritless.

2          *Solomon* is inapposite. At issue was whether then recent 1992 amendments to Business &

3    Professions Code § 17200 permitting a cause of action for a single act of unfair business practices

4    applied retroactively such that Solomon's claim in a proposed amended complaint was not futile.

5    *Solomon* at 1139. Prior to the amendment to § 17200, "a party was required to prove ongoing unfair

6    business practices in order to state a valid claim." *Id*. The Ninth Circuit observed that California's

7    Supreme Court "has expressly held that legislation is presumed to operate prospectively" absent

8    "an express retroactivity provision." *Id*. (quotations and citation omitted). The Ninth Circuit thus

9    concluded that because § 17200 lacked the requisite "express retroactivity provision" Solomon's

10   proposed amendment to include a claim under § 17200 for a single act was futile and denied leave

11   to amend. The court found that it was not an abuse of discretion to interpret § 17200 as lacking a

12   retroactivity provision. *Id*. The court also noted the timing of the motion for leave to amend—

13   coming on the eve of the discovery deadline and after the trial court had already granted summary

14   judgment in favor of the defendant—but did not based its conclusion on this ground alone. *Id*. Here,

15   the Court has not ruled on any motions for summary judgment. Indeed, none have been filed.

16   Moreover, although Caliber's motion was made on the eve of the deadline for discovery as to the

17   named plaintiff, Schick, DFM, and Gabster concealed their declaration for dismissal arrangement

18   until March and April 2021. Caliber filed its motion in May 2021—as early as it could responsibly

19   do so. As such, *Solomon* is not dispositive or even persuasive authority.

20         Separate and apart from the forgoing, Gabster and DFM should not be allowed to claim

21   prejudice because they caused the prejudice themselves. As discussed above, Gabster and DFM

22   caused the delay by agreeing to provide Schick with a declaration that contains statements

23   inconsistent with DFM's discovery responses. *See supra*, section II. A. They also chose to conceal

24   their agreement from Caliber until the figurative last minute, when they sought Caliber's consent

25   to dismissal in April 2021. Further, whether DFM is a viable judgment debtor and whether it is able

26   to defend itself are also irrelevant to the analysis. Neither has a bearing on the underlying merits of

27   Caliber's crossclaims. Indeed, Opposing Parties do not cite to any authority to support their

28   prejudice argument.

1   Lastly, Opposing Parties state in a footnote that, "discovery is presently closed and, to the

2   extent it reopens, Caliber would not be precluded from taking discovery from DFM and Gabster by

3   subpoena if they are permitted to be dismissed." Dkt. No. 94 at p. 6 n.1. However, this argument

4   fails to consider the drastic difference between the liberal rules for conducting discovery on parties

5   and the more burdensome rules for conducting discovery on non-parties. *Monster Energy Co. v.*

6   *Vital Pharm., Inc.*, No. 5:18-CV-01882J-GBS-HKX, 2020 WL 2405295, at *6 (C.D. Cal. Mar. 10,

7   2020) (citation omitted) ("It is a generally accepted rule that standards for non[-]party discovery…

8   require a stronger showing of relevance than for simple party discovery."); *Lemberg Law LLC v.*

9   *Hussin*, No. 16-mc-80066-JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (citation

10  omitted) ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve

11  extra protection from the courts."). Simply put, conducting discovery on DFM and Gabster as

12  parties is drastically different from conducting discovery on them as non-parties. The Court should

13  reject Opposing Parties' flawed arguments.

14  For these reasons, this factor weighs in favor of granting Caliber's motion.

15  **C.      Caliber's Proposed Cross-Complaint Is Not Futile**

16  "[A] proposed amendment is futile only if no set of facts can be proved under the

17  amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller*

18  *v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

19  Caliber's first crossclaim is for violation of California Civil Code § 2343. Dkt. No. 90-1 at

20  ¶¶ 27-31. "Under California tort law, an agent is liable to a third party for the agent's own acts or

21  omissions 'when his acts are wrongful in their nature.'" *Bell v. Federal Home Loan Mortgage*

22  *Corp.*, No. 11-CV-2514-MMA(RBB), 2012 WL 1581075, at *6 (S.D. Cal. May 4, 2012) (quoting

23  Cal. Civ. Code § 2343). Here, Caliber alleges that NexLevel Direct ("NLD") had a principal-agent

24  relationship with DFM. Dkt. No. 90-1 at ¶¶ 15, 28. Caliber also alleges that DFM and Gabster

25  engaged in wrongful acts when DFM initiated calls to Schick in violation of the Telephone

26  Consumer Protection Act. Dkt. No. 90-1 at ¶¶ 22-23, 28-31. Due to their violations, DFM and

27  Gabster are liable to Caliber under section 2343 for any losses Caliber sustains as a result of

28  Schick's lawsuit.

Caliber also asserts the crossclaim of tortious interference with prospective economic advantage against DFM and Gabster. Dkt. No. 90-1 at ¶¶ 32-36. The elements of a tortious interference with contract claim are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008). "A tortious interference with prospective economic advantage claim has the same elements (focusing instead on the existence and knowledge of a prospective economic relationship), but also requires that the defendant's conduct be wrongful by some legal measure other than the fact of interference itself." *Name. Space v. Internet Corp.*, 795 F. 3d 1124, 1134 (9th Cir. 2015) (citation omitted). Caliber sufficiently states this claim. The proposed cross-complaint alleges that Caliber had a contract with NLD, that DFM and Gabster knew of that contract, that Caliber cancelled the contract with NLD once it discovered DFM and Gabster engaged in acts that violated the Caliber's contract with NLD and the TCPA, and that Caliber suffered damages as a result of the contract disruption. Dkt. No. 90-1 at ¶¶ 1-21, 32-36.

Accordingly, Caliber's proposed cross-complaint is not futile.

## III.    CONCLUSION

For these reasons, Caliber respectfully requests that the Court grants its motion for leave to file its cross-complaint against DFM and Gabster.

DATED: June 17, 2021                          **PERKINS COIE LLP**

By: /s/ Thomas N. Abbott
_____
David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
Kristine E. Kruger, Bar No. 253593
KKruger@perkinscoie.com
Thomas N. Abbott, Bar No. 245568
TAbbott@perkinscoie.com

Attorneys for Defendant
Caliber Home Loans, Inc.

152807378.4

1

**PROOF OF SERVICE**

2

I, Matthew Walkup, declare:

3

I am a citizen of the United States and employed in San Francisco County, California. I
am over the age of eighteen years and not a party to the within-entitled action. My business

4

address is 505 Howard Street, Suite 1000, San Francisco, California 94105-3204.

5

On June 17, 2021, I electronically filed the attached document:

6

CALIBER HOME LOANS, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO FILE CROSSCLAIMS AGAINST DRIVING

7

FORCE MEDIA AND BARRY GABSTER

8

with the Clerk of the court using the CM/ECF system which will then send a notification of such
filing to the following:

9

10

Edward A. Broderick                          *Attorneys for Plaintiff*
Broderick Law, P.C.                           Debora Schick

11

99 High Street, Suite 304
Boston, MA 02110

12

(617) 738-7080
(617) 830-0327 (fax)

13

ted@broderick-law.com

14

Jon Bernhard Fougner                         *Attorneys for Plaintiff*
600 California Street, 11th Floor             Debora Schick

15

San Francisco, CA 94108

16

(415) 577-5829
(206) 338-0783 (fax)

17

Jon@FougnerLaw.com

18

Andrew Heidarpour                            *Attorneys for Plaintiff*

19

Heidarpour Law Firm, PLLC                    Debora Schick
1300 Pennsylvania Avenue NW, 190-318

20

Washington, DC 20004
(202) 234-2727

21

AHeidarpour@HLFirm.com

22

Matthew Passi McCue                          *Attorneys for Plaintiff*

23

The Law Office of Matthew P. McCue           Debora Schick
1 South Avenue, Suite 3

24

Natick, MA 01760
(508) 655-1415

25

(508) 319-3077 (fax)

26

mmccue@massattorneys.net

27

28

152807378.4

-10-                    REPLY ISO MOTION FOR LEAVE TO FILE
CROSSCLAIMS

| | |
|---|---|
| Anthony I. Paronich<br>Paronich Law, P.C.<br>350 Lincoln Street, Suite 2400<br>Hingham, MA 02043<br>(617) 485-0018<br>(617) 830-0327 (fax)<br>anthony@paronichlaw.com | *Attorneys for Plaintiff*<br>Debora Schick |
| Adam J. Schwartz<br>Adam J. Schwartz, Attorney at Law<br>5670 Wilshire Boulevard, Suite 1800<br>Los Angeles, CA 90036<br>(323) 455-4016<br>adam@ajschwartzlaw.com | *Attorneys for Plaintiff*<br>Debora Schick |
| Charlotte Fernee Kelly<br>Fernee Kelly Law<br>1228 East 7th Avenue, Suite 200<br>Tampa, FL 33605<br>(813) 315-3981<br>charlotte@ferneekellylaw.com<br>PRO HAC VICE | *Attorneys for Plaintiff*<br>Debora Schick |
| Debbie Paulerio Kirkpatrick<br>Sessions Israel & Shartle, LLP<br>1545 Hotel Circle South, Suite 150<br>San Diego, CA 92108<br>(619) 758-1891<br>Fax: (877) 334-0661<br>dkirkpatrick@sessions.legal<br>jschultz@sessions.legal | *Attorneys for Defendants*<br>Driving Force Media<br>Barry Gabster |
| Seth Wesley Wiener<br>Law Offices of Seth W. Wiener<br>609 Karina Court<br>San Ramon, CA 94582<br>(925) 487-5607<br>Fax: (925) 828-8648<br>seth@sethwienerlaw.com | *Attorneys for Defendant*<br>NexLevel Direct LLC |

REPLY ISO MOTION FOR LEAVE TO FILE
CROSSCLAIMS

152807378.4

1

2

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

3

Executed on June 17, 2021, at San Francisco, California.

4

5

*/s/ Matthew Walkup*

Matthew Walkup

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOTION FOR LEAVE TO FILE
CROSSCLAIMS

152807378.4