UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH SCHICK,<br><br>        Plaintiff,<br><br>    v.<br><br>CALIBER HOME LOANS, INC., et al.,<br><br>        Defendants. | Case No. 20-cv-00617-VC<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 100, 101 |

      Deborah Schick raises claims against defendants Caliber Home Loans and NexLevel Direct under the Telephone Consumer Protection Act. 47 U.S.C. § 227. She seeks to hold Caliber and NexLevel vicariously liable for violations of the TCPA committed by a subcontractor, Driving Force Media. Caliber and NexLevel move for summary judgment on both claims. Because Caliber and NexLevel neither gave Driving Force authority to violate the TCPA nor ratified its acts, summary judgment is granted to both defendants on all claims.

      Caliber hired NexLevel in March of 2019 to generate leads for its home loan refinancing business. Their contract mandated that NexLevel "perform or provide" its services "in full compliance with . . . all applicable federal, state, and local laws, regulations and ordinances." Caliber also required NexLevel to "not allow any subcontractor . . . to perform or provide" services "without . . . prior written consent." For its part, NexLevel promised that it would provide only "TCPA compliant data records" in generating leads for Caliber. Ignoring the subcontractor provision, NexLevel then went behind Caliber's back and hired Driving Force to provide the leads without Caliber's consent. Driving Force twice called Schick at a number listed on the national "Do Not Call" registry in November of 2019.

Because neither Caliber nor NexLevel placed the calls to Schick, all agree they may not be held directly liable under the TCPA. 47 U.S.C. § 227(b)(1)(A) (declaring it unlawful "to make any call"). Schick instead argues vicarious liability. Courts look to "federal common law agency principles of vicarious liability" to decide whether to hold a seller responsible for its agent's TCPA violations. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013). The Restatement (Third) of Agency guides the analysis. *Kristensen v. Credit Payment Services Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018). It imposes liability where an agent acts with actual authority, apparent authority, as an employee, or where a seller ratifies an act after the fact. *Jones v. Royal Administration Services, Inc.*, 87 F.3d 443, 448–49 (9th Cir. 2018).

1. With respect to Caliber, Schick does not argue that Driving Force acted with either actual or apparent authority. After all, the undisputed evidence is that Caliber had no knowledge of Driving Force prior to Schick's lawsuit. Caliber prohibited NexLevel from subcontracting without advance authorization. And it specifically directed NexLevel to stay within the bounds of federal law, including the TCPA. Nothing suggests that Caliber either directed Driving Force to violate the TPCA or that it approved of Driving Force's actions.

Ratification occurs only where an actor is an agent or "purport[s] to be one." Restatement (Third) of Agency § 4.03 cmt. b.; *Kristensen*, 879 F.3d at 1014. A principal ratifies by accepting the benefits of an agent's act with either (1) knowledge of the "material facts," meaning the TCPA violation, or (2) knowledge of "facts that would have led a reasonable person to investigate further." Restatement §§ 4.01 cmt. b., 4.06 cmt. d.; *Abante Rooter and Plumbing, Inc. v. Arashi Mahalo, LLC*, 2019 WL 6907077, at *1 (N.D. Cal. Dec. 19, 2019). Schick's ratification theory comes up short for the following reasons, each of which may independently require entry of summary judgment for Caliber, but both of which combine to make this a fairly easy question:

- Nothing suggests that Driving Force "pretended and demonstrably assumed to act as" Caliber's agent. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1074 (9th Cir. 2018). So far as the record shows, NexLevel "sold leads as if in a marketplace" and could transfer its leads to other customers besides Caliber. So too of Driving Force,

2

which supplied leads to "4 to 6 other companies" alongside Caliber. Those facts foster doubt that Driving Force ever "purport[ed]" to act as Caliber's agent. Restatement § 4.03 cmt. b.; *Kristensen*, 879 F.3d at 1014–15.

- The record shows that in response to customer complaints, Caliber tried to ensure TCPA compliance. When Caliber heard from customers who had been called despite listing their numbers on the Do Not Call registry, it followed up with NexLevel about its TCPA policies. When complaints continued, Caliber instructed NexLevel to "immediately stop all leads." And when the problems persisted after NexLevel restarted lead generation, Caliber cut ties with NexLevel altogether. *See Arashi Mahalo*, 2019 WL 6907077, at *1.

Contrary to Schick's argument, Caliber did not ignore "red flags" about TCPA violations. True, there is an early exchange between Caliber and NexLevel about a test batch of ten leads. Caliber noted that one of the ten customers said that he had requested to be placed on a Do Not Call list, meaning that, "[i]f the customer is correct, we should never have received this one." But this one-off exchange falls short of showing ratification. Had Caliber outright ignored signs that NexLevel supplied non-compliant leads, there might be a genuine dispute as to vicarious liability. But rather than blindly accept leads running afoul of the TCPA, Caliber prodded NexLevel about its TCPA compliance, promptly demanded a pause in lead generation, and canceled its contract with NexLevel altogether soon thereafter. *Compare Henderson*, 918 F.3d at 1076 (describing evidence that the defendant sought "to remain willfully ignorant").

2. With respect to NexLevel, Schick argues that Driving Force acted with actual authority because NexLevel controlled its operation, and alternatively that NexLevel ratified Driving Force's acts after the fact. But no reasonable jury could find NexLevel vicariously liable based on the evidence in the record.

Actual authority "derives from an act specifically mentioned to be done in a written or oral communication" or "comes from a general statement of what the agent is supposed to do." *N.L.R.B. v. District Council of Iron Workers of the State of California and Vicinity*, 124 F.3d 1094, 1098 (9th Cir. 1997). It is not enough to "establish an agency relationship." *Jones*, 87 F.3d

3

at 449. A TCPA plaintiff must also show that the principal gave "actual authority to place the unlawful calls." *Id.* Schick can point to no evidence showing that NexLevel told Driving Force to place calls violating the TCPA. For that reason, actual authority is not a viable theory of liability.

Nor did NexLevel exercise sufficient control over Driving Force to establish vicarious liability. On this point, the present case is similar to *Jones*. Although the principal in *Jones* provided scripts and materials for "weekly reports" on sales, it did not "control the hours the telemarketers worked nor did it set quotas for the number of calls or sales the telemarketers had to make." *Id.* at 451. More, the principal "did not have any control of a telemarketer's call until the telemarketer decided to pitch" the principal to the customer. *Id.* The principal provided "some training and oversight," but did not typically supervise the agent's calls. *Id.* at 452. Nor did it provide phones and computers used to make calls. *Id.* All the same can be said of NexLevel's relationship with Driving Force. NexLevel set some "expectations" for lead generation, including parameters for the loans Caliber hoped to receive. As in *Jones*, NexLevel "provided instructions" to get Driving Force "set up to make live transfers to Caliber." And it "provided feedback . . . on the number and quality of live transfers to Caliber." But beyond those high-level parameters, NexLevel did not control or dictate the manner or means of Driving Force's work.

As a last resort, Schick argues that like Caliber, NexLevel ratified Driving Force's TCPA violations. But just as Caliber cut off its relationship with NexLevel when customer complaints cropped up, NexLevel did the same with Driving Force. Indeed, it did so even more promptly.

**IT IS SO ORDERED.**

Dated: 09/14/2021

VINCE CHHABRIA
United States District Judge